UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIZABETH TORRES and | : | CIVIL ACTION NO.: |
| SAMUEL TORRES | : | |
|    Plaintiffs, | : | |
| | : | |
| v. | : | COMPLAINT |
| | : | |
| THE BARBERINO BROTHERS, INC. and | : | TRIAL BY JURY DEMANDED |
| REGIONAL ACCEPTANCE | : | |
| CORPORATION | : | April 14, 2016 |
|    Defendants. | : | |

COMPLAINT

I. INTRODUCTION

1.  This is an action brought by two consumers under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.,* and Article 2 of the Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-101 *et seq.* ("UCC") against a car dealership that fraudulently and maliciously sold them a used motor vehicle that had previously been in a collision and was improperly repaired, leaving it in an unsafe condition.  Plaintiffs also asserts pendent state law claims against the dealership for violations of the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 *et seq.*  Plaintiffs also assert claims against the holder of the contract, Regional Acceptance Corporation ("RAC").

II. PARTIES

2.  Plaintiff Elizabeth Torres ("Elizabeth") is a natural person residing in New Haven, Connecticut.

3. Plaintiff Samuel Torres ("Samuel") is Elizabeth's spouse and is a natural person residing in New Haven, Connecticut

4. The Barberino Brothers, Inc. ("Barberino") is a Connecticut corporation that operates a motor vehicle dealership in Wallingford, Connecticut.

5. RAC is a North Carolina corporation with a principal office in Greenville, North Carolina and is a sales finance company that accepts the assignment of retail installment contracts from Connecticut car dealerships.

### III.  JURISDICTION

6. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7. Jurisdiction in this court is also proper under MMWA, 15 U.S.C. § 2310, because the amount in controversy, when common law punitive damages are included, exceeds $50,000.

8. This Court has jurisdiction over Barberino because it is organized under the laws of the state of Connecticut and regularly conducts business in this state.

9. This Court has jurisdiction over RAC because it regularly conducts business in the state of Connecticut.

10. Venue in this Court is proper, because the Plaintiffs reside in Connecticut and the transaction occurred in this state.

## IV. FACTUAL ALLEGATIONS

11. Prior to May 20, 2015, Plaintiffs saw an advertisement on television by Barberino for a "Cash for Junkers" promotion whereby Barberino would allow $3,500 towards the purchase of a vehicle regardless of the condition of the trade-in.

12. Plaintiffs owned a 2002 Acura TL that they were interested in trading-in and they believed that the cash for clunkers program would be advantageous to them.

13. Unbeknownst to Plaintiffs, Barberino's "Cash for Junkers" promotion includes a condition that consumers are not permitted to negotiate the price of the vehicle being purchased.

14. Also unbeknownst to Plaintiffs, Barberino has a business practice of setting the asking price for motor vehicles by seeking advance approval from sales finance companies such as RAC and then determining the maximum sales price that they can charge for a vehicle without exceeding the credit approval obtained.

15. In determining the maximum sales price that it can charge, Barberino adds the amount allowed for any trade-in to the amount that a creditor will finance for the vehicle's purchase.

16. Because Barberino adds the amount of the trade-in allowance to its asking price, it effectively "swallows" the trade-in and the down payment so that the consumer does not receive any credit for the trade-in vehicle.

17. On or about May 20, 2015, Plaintiffs visited Barberino, and they met with a salesman named Randy.

18. Randy had Elizabeth complete a credit application before he showed Plaintiffs any vehicles.

3

19. Randy told Plaintiffs that Elizabeth could not get approved for financing, and Samuel suggested that he co-sign.

20. At the time, Samuel was unemployed and receiving unemployment benefits, and he told Randy that he was not working.

21. Samuel completed a credit application, and Randy told them they were approved for financing.

22. Randy showed Plaintiffs a 2012 Nissan Maxima (the "Vehicle") and told them the Vehicle was the only one that they would be approved to purchase.

23. After Plaintiffs test drove the Vehicle, they asked Randy for a Carfax report.

24. Randy provided Plaintiffs with a Carfax report, which showed that the Vehicle had been in an accident.

25. Randy informed Plaintiffs that the accident was a "minor" front-end collision with a bicycle and that it was "not a big deal."

26. This was a false and deceptive statement, because the prior damage to the Vehicle was quite extensive and involved both the front-end and the rear-end of the Vehicle. Additionally, the Vehicle had not been properly repaired, was structurally damaged, and was not safe to drive. Additionally, the statement that the accident involved a bicycle was made with a reckless disregard for whether the statement was true.

27. Plaintiffs agreed to purchase the Vehicle, and Barberino prepared a Purchase Order and Retail Installment Contract (the "Contract").

28. The Purchase Order provided for a cash price of $24,450, which price was incorporated into the Contract.

29. The Contract also included an allowance of $3,500 for Plaintiffs' trade in of a 2002 Acura TL.

30. The $3,500 promised allowance was substantially greater than the actual value of the Acura TL, which was approximately $2,000 or less.

31. The Contract was assigned to RAC.

32. The NADA value of the Vehicle was approximately $19,475, and Plaintiffs believe, and therefore allege, that Barberino added the trade-in allowance to the cash price for the Vehicle consistent with its ordinary policy.

33. The Vehicle was sold with an express written warranty that the Vehicle would be mechanically operational and sound for sixty days or 3,000 miles, whichever period ends first.

34. Plaintiffs met with a finance manager, believed to be Jason Napolitano, in the finance department and they signed the Contract documents.

35. Napolitano told Plaintiffs that it would take Barberino a couple of days to get the plates for the vehicle, and Barberino provided Plaintiffs with a loaner Vehicle.

36. Plaintiffs were not provided with copies of the Contract and purchase paperwork at the time that they executed those documents.

37. More than one week passed before Barberino contacted Plaintiffs to take delivery of the Vehicle, and they were provided with documents at that time.

38. Approximately two weeks after accepting delivery of the Vehicle, Plaintiffs noticed that the Vehicle was leaking water around the roof light and from under the

glove compartment, there was condensation on the inside of the windows when it rained and the Vehicle smelled damp.  Plaintiffs also heard water behind the right rear door.

39. Samuel brought the Vehicle back to Barberino in approximately late August.  Samuel asked Barberino to check for mold because the Vehicle smelled damp.

40. Barberino's Managing Partner, John Mocadlo, told Samuel that Barberino would charge him to take the car apart to inspect for mold.

41. Samuel did not agree to pay for that work at that time.

42. Plaintiffs brought the vehicle back to Barberino a week or two later.  The service department told Plaintiffs that the water problem was due to a clog in the drainage of the sunroof.  Samuel again asked Barberino to check for mold, and Barberino told him Plaintiffs would have to pay for that because it was not covered by the warranty.

43. Plaintiffs later became interested in trading-in the Vehicle on or about January 30, 2016, and they brought the Vehicle to CarMax to obtain an appraisal. They learned at that time that the Vehicle had prior damage.

44. Plaintiffs returned to Barberino and demanded that it repurchase the Vehicle, which demand was refused by Mocadlo.

45. On March 8, Plaintiffs and their counsel had an independent auto body expert inspect the Vehicle to ascertain the extent of the unrepaired damage and the condition of the Vehicle.

46. Upon learning that the Vehicle had significant structural damage and was not safe to drive, Plaintiffs returned it to Barberino's lot on March 10.

47. On March 11, 2016, Plaintiffs, through counsel, provided notice to Barberino and RAC of the condition of the Vehicle, that Plaintiffs had revoked acceptance of the Vehicle, and that the Vehicle had been returned to Barberino.

48. The Plaintiffs have returned the Vehicle to Defendants and have placed them in their original position prior to the transaction, or as close to that position as possible.

49. Defendants have not returned Plaintiffs trade-in or its value, nor have they returned to Plaintiffs the payments made to RAC under the Contract.

50. RAC, as holder of the Contract, is subject to defenses that could be raised against Barberino, and RAC is liable for claims against Barberino (excluding the claim asserted under TILA) under the terms of the contract and pursuant to Conn. Gen. Stat. § 52-572g.

## V. CAUSES OF ACTION

### A. TRUTH IN LENDING ACT (Barberino Only)

51. Barberino failed to provide Plaintiffs with a copy of the Contract, which contained the truth in lending disclosures, on the date the documents were signed.

52. Consequently, Barberino violated TILA by failing to give Plaintiffs the required disclosures in a form that they could keep prior to consummation of the transaction.

53. Barberino further violated TILA by inaccurately itemizing the amount financed by increasing the sale price of the Vehicle by the amount of the trade-in allowance.

54. For its violations of TILA, Barberino is liable to Plaintiffs for statutory damages of $2,000 plus their actual damages, and a reasonable attorney's fee pursuant to 15 U.S.C. § 1640.

### B. RETAIL INSTALLMENT SALES FINANCE ACT

55. By failing to provide Plaintiffs with a copy of the Contract, Barberino also violated RISFA, Conn. Gen. Stat. § 36a-771(a).

56. Through its violations of TILA, Barberino further violated RISFA, which incorporates the requirements of TILA by operation of Conn. Gen. Stat. § 36a-771(b).

57. For Barberino's violations of RISFA, Plaintiffs are entitled to a rescission of the Contract.

### C. CONNECTICUT UNFAIR TRADE PRACTCES ACT

58. Barberino violated CUTPA in the following ways:

   a. It sold Plaintiffs an unsafe vehicle and it misrepresented its condition;

   b. It falsely told Plaintiffs that the accident reported on the Carfax report was a front-end collision with a bicycle and not a big deal; and

   c. It offered Plaintiffs $3,500 for their trade-in and then increased the purchase price of the Vehicle to off-set the over-allowance on the trade.

59. As a result of the conduct of the defendants, Plaintiffs suffered ascertainable losses and damages, including, but not limited to, the purchase of a Vehicle that was worth significantly less than what Plaintiffs paid for it, and the loss of their deposit and payments made under the Contract.

60. For Defendant's violations of CUTPA, Plaintiffs are entitled to their damages plus punitive damages and a reasonable attorney's fee.

### D.  BREACH OF EXPRESS WARRANTY

61. The Vehicle is a consumer product as that term is defined in § 2301(1) of MMWA.

62. The Vehicle was sold to Plaintiffs with a written warranty that the Vehicle would be mechanically operational and sound for the lesser of 60 days or 3,000 miles.

63. Barberino's 60 day or 3,000 mile guarantee constituted an express warranty under Conn. Gen. Stat. § 42a-2-313, which warranty has been breached and it constituted a written warranty under MMWA.

64. Barberino has breached the warranty, and Plaintiffs are entitled to revoke acceptance of the Vehicle and to damages.

65. Barberino's breach of express warranty was tortious in nature, intentional, in bad faith, and was wanton and malicious, outrageous, and undertaken with bad motive and with a reckless indifference to Plaintiffs' interests and the injury that they sustained.

66. Plaintiffs are entitled to revoke acceptance of the Vehicle.

67. Barberino is liable to Plaintiffs for their damages, including common law punitive damages, and attorney's fees and costs under MMWA and Article 2.

### E.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

68. The Vehicle is a consumer product as that term is defined in § 2301(1) of MMWA.

69. Barberino breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, because the Vehicle would not pass in trade without objection, was not fit for the purposes that motor vehicles are ordinarily used, or both.

70. Additionally, the Vehicle was not in merchantable condition because its structural deficiencies present a safety hazard to its occupants.

71. It is not possible for Barberino to cure the breach of implied warranty of merchantability.

72. Barberino's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiffs' interests and the injury that they sustained

73. Plaintiffs are entitled to revoke acceptance of the Vehicle.

74. Barberino is liable to Plaintiffs for their damages, including common law punitive damages, and attorney's fees and costs under MMWA and Article 2.

Wherefore, Plaintiffs claim actual damages, statutory damages under TILA, statutory punitive damages under CUTPA, common law punitive damages under MMWA, attorney's fees and costs, and an order that Plaintiffs have no continuing obligation under the Contract.

PLAINTIFFS DEMAND A TRIAL BY JURY

> PLAINTIFFS, ELIZABETH TORRES and
> SAMUEL TORRES,
>
> By: /s/ *Daniel S. Blinn*_____
> Daniel S. Blinn (ct02188)
> dblinn@consumerlawgroup.com
> Consumer Law Group, LLC
> 35 Cold Spring Rd. Suite 512
> Rocky Hill, CT  06067
> Tel. (860) 571-0408
> Fax (860) 571-7457